UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISIDRO GALLARDO, *on behalf of himself, FLSA Collective Plaintiffs, and the Class*, <br><br> Plaintiff, <br><br> v. <br><br> 530 FOOD CORP. <br>    d/b/a KEY FOOD, <br> 2401 FOOD CORP. <br>    d/b/a KEY FOOD UWS, <br> TED Y PARK, <br><br> Defendants. | Case No.: <br><br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff, ISIDRO GALLARDO ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Collective and Class Action Complaint against Defendants, 530 FOOD CORP. d/b/a KEY FOOD and 2401 FOOD CORP. d/b/a KEY FOOD UWS ("Corporate Defendants") and TED Y PARK ("Individual Defendant", and together with Corporate Defendants, "Defendants"), and states as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff alleges, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and other similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving; (2) liquidated damages; and (3) attorney's fees and costs.

2.      Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving; (2) compensation for late payment of wages; (3)

unpaid spread of hours premium; (4) statutory penalties; (5) liquidated damages; and (6) attorney's fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C § 216(b), 28 U.S.C §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Southern District pursuant to 28 U.S.C § 1391.

## PARTIES

5.     Plaintiff ISIDRO GALLARDO is a resident of New York County, New York.

6.     Defendants collectively own and operate grocery stores at the following locations in New York City:

(a) Key Food – 530 Amsterdam Avenue, New York, NY 10024 ("Amsterdam location"); and

(b) Key Food UWS – 2401 Broadway, New York, NY 10024 ("Broadway location").

(collectively, the "Grocery Stores")

7.     Corporate Defendants own and operate the Grocery Stores as a single integrated enterprise, under the control of the Individual Defendant. Specifically, Corporate Defendants are engaged in related activities, share common ownership, and have a common business purpose:

(a) The Grocery Stores are under the control of Corporate Defendants and Individual Defendant. Specifically, Individual Defendant owns and operates all the Grocery Stores.

(b) Liquor license of the Amsterdam location lists Individual Defendant as principal. *See* **Exhibit A**, 530 Food Corp.'s liquor license

(c) The Grocery Stores are in the same retail business which offers food and household products to its consumers.

(d) The Grocery Stores share a common management as managers were interchangeable among all locations. Specifically, based on Plaintiff's personal observations, Manager David [LNU] managed both Grocery Store locations.

(e) The Grocery Stores also share employees. Plaintiff himself worked for the Amsterdam location from in or around June 2016 to March 2024 and was transferred to the Broadway location to train new employees at that location when it opened.

(f) The Grocery Stores also utilized the same supply system. The Grocery Stores ordered supplies, except produce items, from the same trucking company and vendors.

(g) The Grocery Stores are located in close proximity to one another. The Grocery Stores are situated a few blocks apart, facilitating the easy interchange of employees, managers and supplies.

(h) The Grocery Stores share a common human resources department as potential employees may apply through a common career page found on the Key Food website. *See* **Exhibit B,** Key Food website.

(i) The Grocery Stores share financial resources as they offer gift cards that can be used in any location. *See* **Exhibit C,** Key Food gift card.

(j) The Grocery Stores offer similar services such as, customer service, product recalls, digital coupons, online pick-up and delivery services, gift cards, coupons, and refund and cancellation policy, through Key Food Stores Co-op, Inc., a cooperative of which the Grocery Stores are members. *See* **Exhibit D.**

(k) Additionally, the Grocery Stores share common payroll policies and have a single, centralized system of labor relations for employees. Based on Plaintiff's experience, personal observations and conversations, all Grocery Stores implemented common wage and hour violations. Specifically, all Stores implemented an unlawful time-shaving policy. Plaintiff personally experienced and suffered from the same time-shaving policy when he was transferred from Key Food to Key Food Upper West Side.

8.      All Restaurants shared common ownership, common management, interrelation of operations, and centralized control of labor relations, as illustrated above. The grocery stores share numerous commonalities such as purpose that would classify them as a "single integrated enterprise," including but not limited to, identical illegal wage and hour policies and interchangeability of employees and managers. Consequently, the grocery stores and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to Class members for whom Plaintiff seeks to represent.

9.      Corporate Defendant 530 FOOD CORP. d/b/a KEY FOOD is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 530-534 Amsterdam Avenue, New York, NY 10024.

10.     Corporate Defendant 2401 FOOD CORP. d/b/a KEY FOOD UWS is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 2401 Broadway, New York, NY 10024 and an address for service of process located at c/o MUND & MCDONALD PLLC, 55 Cherry Lane, Suite #101, Carle Place, NY 11514.

11.     Individual Defendant is the owner and executive officer of the Corporate Defendants. Individual Defendant exercised control over the employment terms and conditions of Plaintiff, FLSA Collective, and Class members. Individual Defendant had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective, and Class members. At all times, employees of each of the Corporate Defendants could complain to Individual Defendant directly regarding any of the terms of their employment, and Individual Defendant would have the authority to effect any changes to the quality and terms of employees' employment. Individual Defendant directly reprimanded any employee who did not perform their duties correctly. Individual Defendant exercised functional control over the business and financial operations of the Corporate Defendants.

12.     At all relevant times, each Corporate Defendants, was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and regulations thereunder.

13.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

14.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and the Class members were employees of Defendants within the meaning of the FLSA and NYLL. At all

relevant times, Defendants were employers of Plaintiff, FLSA Collective Plaintiffs, and Class members within the meaning of the FLSA and NYLL.

15.     At all relevant times, Defendants employed at least forty (40) employees as defined under the NYLL during the relevant statutory period.

16.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, store associates, store clerks, cashiers, stockers, price coordinators, counter employees, janitors, porters, baggers, packers, and delivery persons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (herein, "FLSA Collective Plaintiffs").

18.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay employees their proper wages, including overtime, due to time-shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

19.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this

action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

20.    Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, employees (including, but not limited to, store associates, store clerks, cashiers, stockers, price coordinators, counter employees, janitors, porters, baggers, packers, and delivery persons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

21.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

23.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each

member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) failing to pay wages, including overtime, due to time-shaving; (ii) compensation for late payment of wages; (iii) unpaid spread of hours premium; (iv) failing to provide proper wage statements per requirements of NYLL; and (v) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

24.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

25.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

26.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class

members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.     Common questions of fact and law exist as to members of the Class which predominate over questions affecting only individual members of the Class, including but not limited to the following:

a) Whether Defendants employed Plaintiff and the Class members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

d) Whether Defendants properly compensated Plaintiff and Class members for all hours worked, including overtime hours;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class members for all hours worked, including overtime hours, due to time-shaving;

f) Whether Defendants applied improper automatic meal break deductions to the hours worked by Plaintiff and Class members;

g) Whether Defendants paid Plaintiff and Class members their lawful wages in a timely manner;

h) Whether Defendants paid Plaintiff and Class members spread of hours premium for shifts worked in excess of ten (10) hours;

i) Whether Defendants provided proper wage statements reflecting all hours worked by Plaintiff and Class members, and other information required to be provided on wage statements on the date of hiring and annually thereafter, as required under the FLSA and NYLL;

j) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL.

## STATEMENT OF FACTS

*Wage and Hour Claims:*

29.     In or around June 2016, Plaintiff was employed to work in the Produce Department at Defendants' Key Food located at 530 Amsterdam Ave, New York, NY 10024. Plaintiff terminated his employment with Defendants in or around July 2024 due to unpaid wages.

30.     In or around March 2024, Plaintiff was sent to work by Individual Defendant permanently at "Key Food Upper West Side," a grocery store located at 2401 Broadway, New York, NY 10024.

31.     Throughout his employment, Plaintiff was compensated in cash weekly by Defendants. Plaintiff was paid the prevailing minimum wage at the start of his employment and received a raise up to seventeen dollars ($17.00) per hour at some point between the start of his employment to in or around March 2024. From in or around March 2024 to the end of his employment, Plaintiff was paid sixteen dollars ($16.00) per hour. FLSA Collective Plaintiffs and Class members were paid at a similar wage rate.

32.     From the start of his employment to in or around March 2024, Plaintiff worked at Key Food for seven (7) days a week, from 3:00 a.m. to 3:00 p.m., twelve (12) hours a day, for total of eighty-four (84) hours a week. From in or around March 2024 to the end of his employment, Plaintiff worked at both the Amsterdam and Broadway locations seven (7) days a week, 3:00 a.m. to 12:00 p.m., nine (9) hours a day for a total of sixty-three (63) hours a week. FLSA Collective and Class members had similar schedules.

33.     Throughout Plaintiff's employment, Defendants would require Plaintiff to not clock in at least twice a week. He was instructed by Defendants to work off-the-clock during

those two days. As a result, Plaintiff was not compensated his proper wages, including overtime, for at least twenty-four (24) hours per week from the start of his employment to in or around March 2024. From in or around March 2024, Plaintiff was not compensated his proper wages, including overtime, for at least eighteen (18) hours a week. Similarly, FLSA Collective Plaintiffs and Class members were also required to not clock-in and work off-the-clock on some days of the workweek. Thus, FLSA Collective Plaintiffs and Class members were not compensated for all their hours worked.

34.     At all times of Plaintiff's employment, Plaintiff was unable to take a free and clear thirty (30) minute meal break as he was required to work through his break at least twice a week. Despite being required to work through his meal break, Plaintiff was still required to clock-out for thirty (30) minutes for his meal break. Thus, because Plaintiff was clocked out during his meal break even when he was working, he was not compensated for the time he worked during his meal breaks. Plaintiff was not compensated for at least one (1) hour each week due to this policy. Similarly, FLSA Collective Plaintiffs and Class members were also required to work during their meal breaks. However, they were required to clock-out during their meal break even if they were working through it. As a result, Defendants timeshaved Plaintiff, FLSA Collective Plaintiffs, and Class members thirty (30) minutes each shift they were required to work through their meal break because of this policy.

35.     Plaintiff suffered from Defendants' time-shaving policies regardless of which grocery store he worked at. Based on Plaintiff's experience, observations and conversations with co-workers, Defendants implemented the same time-shaving policies at all the grocery stores.

36.     From the start of his employment to in or around March 2024, Plaintiff regularly worked twelve (12) hour shifts, Despite having worked shifts exceeding ten hours in duration, Plaintiff never received any spread of hours premium, as required under the NYLL. Class Members who worked shifts longer than ten hours in duration were also not paid spread of hours premiums.

37.     Throughout his employment, Defendants failed to timely pay Plaintiff his wages. Plaintiff did not receive his wages within seven days of the end of the week in which Plaintiff earned them, in violation of NYLL § 191(1)(a)(i). Defendants' regular pay day was scheduled every Friday. However, Plaintiff often does not receive his wages every Friday. He often received his wages two (2) to three (3) days later. From his observations and conversations with co-workers, Plaintiff knows that Class Members similarly did not receive their wages within seven days during the week in which they were earned, because it was a common policy of Defendants. Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

38.     Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

39.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

40.     Defendants further violated the Wage Theft Protection Act ("WTPA") by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy

the requirements of the WTPA. See *Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

41.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed,

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id*. The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id*.

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

42.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members.

Defendants' failure to provide paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

43.    Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total number of hours Plaintiff and Class members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

44.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

45.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

46.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports

to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

47.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. See *McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

48.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr*. N.Y., LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

49.    Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

50.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting

requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. Id. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

51.     The case at bar is somewhat different from Coward inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiff[] ha[s] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

52.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

53.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail

paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

54.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii))

55.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members for all hours worked, including overtime, due to Defendants' policy of timeshaving.

56.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class members their proper wages within seven days after the end of the week in which the wages are earned, in violation of the NYLL.

57.    Defendants knowingly and willfully failed to pay Plaintiff and Class members their spread of hours premiums for shifts worked in excess of ten (10) hours, in violation of the NYLL.

58.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with wage notices upon hiring and annually thereafter as required under NYLL.

59.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with proper wage statements as required under NYLL.

60.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

61.    Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

62.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

63.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

64.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

65.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs due to time-shaving policies.

66.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

67.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages when Defendants knew or should have known such was due.

68.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

69.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

70.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to timeshaving, plus an equal amount as liquidated damages.

71.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

72.     Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

73.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

74.     At all relevant times, Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper compensation, including overtime, for all hours worked due to a policy of timeshaving.

75.     At all relevant times, Defendants had a policy and practice of failing to pay proper wages, including overtime, to Plaintiff and Class Members within seven days after the end of the week in which the wages are earned.

76.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts lasting longer than ten (10) hours in duration, in violation of the NYLL.

77.     Defendants failed to properly notify Plaintiff and Class Members of their hourly pay rates and overtime rates, in direct violation of the New York Labor Law.

78.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under NYLL.

79.     Defendants knowingly and willfully operated their business with a policy of failing to provide wage notices upon hiring and annually thereafter, as required under NYLL.

80.     Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their (1) unpaid wages, including overtime,

due to time-shaving, (2) unpaid spread of hours premium, (3) compensation for late payment

of wages, (4) statutory penalties, (5) liquidated damages, (6) reasonable attorneys' fees and

costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class

members, respectfully requests that this Court grant the following relief:

    a.   A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

    b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

    c.   An award of unpaid wages, including overtime, due to timeshaving under FLSA and NYLL;

    d.   An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

    a.   An award of unpaid spread of hours premiums, due under the NYLL;

    b.   An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements;

    a.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, overtime compensation, and spread of hours premium, pursuant to FLSA and NYLL;

b.  An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

c.  Designation of Plaintiff as Representatives of FLSA Collective Plaintiffs;

d.  Designation of this action as a class action pursuant to F.R.C.P. 23;

e.  Designation of Plaintiff as Representative of the Class; and

f.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Dated:    January 10, 2025                    Respectfully submitted,
          New York, New York

                                        By:   */s/ C.K. Lee*_____
                                              C.K. Lee, Esq.

                                              **LEE LITIGATION GROUP, PLLC**
                                              C.K. Lee (CL 4086)
                                              148 West 24th Street, 8th Floor
                                              New York, NY 10016
                                              Tel.: (212) 465-1188
                                              Fax: (212) 465-1181
                                              *Attorneys for Plaintiff, FLSA Collective*
                                              *and the Class*

24