UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Isidro Gallardo, on behalf of herself, FLSA Collective Plaintiffs, and the Class,

                                    Plaintiff,

                    -against-

530 Food Corp. d/b/a/ Key Food, 2401 Food Corp. Key Food UWS, Ted Y. Park,

                                    Defendants.

25-cv-201 (AS)


OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

This is a claim brought under the Fair Labor Standards Act (FLSA) against two Upper West Side outposts of a chain of grocery stores. Isidro Gallardo worked at Key Food's Amsterdam Avenue location from 2016 until 2024, when he alleges that he resigned because of unpaid wages. Dkt. 31 ¶ 1. Toward the end of his tenure, he worked a bit at the Broadway location as well, a few blocks away. *Id.* ¶ 2. At both locations, he says that he clocked in at around 3:00 every morning worked until 3:00 in the afternoon but that his timesheets instead showed that he clocked in at 6:30 or 7:00 in the morning and that he was told to clock out around noon, three hours before the actual end of his shift. *Id.* ¶¶ 4–5. Then, even though he worked seven days a week, his manager told him not to clock in sometimes, meaning that he got paid only for six of those days. *Id.* ¶ 6.

Importantly, Gallardo alleges that he isn't the only one who was underpaid. He identifies seven other employees across both locations that experienced the same issues. *Id.* ¶ 3. That's the basis for this FSLA collective action claim: Gallardo is suing and wants to certify a class of workers from both Key Food locations to recover their lost wages. He has moved for conditional certification, which defendants have opposed. For the reasons below, the Court GRANTS the motion for conditional certification with some modifications to the notice.

## LEGAL STANDARDS

The FLSA allows "one or more employees" to bring suits on "behalf of himself or themselves and other employees similarly situated" against an employer for unlawful employment practices. 29 U.S.C. § 216(b). Unlike class actions brought under Federal Rule of Civil Procedure 23, "only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'" *Mendoza v. Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)). "[D]istrict courts 'have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d

Cir. 2010) (alterations omitted) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has endorsed a two-step process for certifying an opt-in FLSA collective action. *Id.* at 554–55. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. The first step requires only a "modest factual showing" that the plaintiff "and potential opt-in plaintiffs" were the "victims of a common policy or plan that violated the law." *Id.* (internal quotations omitted). At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*

"In deciding a conditional certification motion, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Ramirez v. Liberty One Grp. LLC*, 2023 WL 4541129, at *3 (S.D.N.Y. July 14, 2023) (internal quotations omitted). Indeed, "Courts in this District have repeatedly granted conditional certification based upon a single plaintiff's affidavit containing no more than some combination of descriptions of personal experience, observations of other employees sharing that experience, and references to conversations with those employees." *Id.* (collecting cases); see also *Escobar v. Motorino E. Vill. Inc.*, 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).

## DISCUSSION

### I.    Gallardo sufficiently alleges that defendants ran a single integrated enterprise

Defendants argue that no class can be certified against both locations because they aren't a single employer but instead multiple—in other words, they aren't an "enterprise" under the statute. The FSLA defines an enterprise as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units." 29 U.S.C. § 203(r)(1). To figure out if that definition is satisfied, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).

Defendants argue that the stores are managed separately (factors 1 and 3), that "the work force is managed separately," (factor 2), and that the two stores are separate legal entities (factor 4). As an initial matter, this question "is not properly determined at the class certification stage." *Taveras v. D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (alterations omitted). That's because it's so fact intensive, and conditional certification instead only requires a modest showing by the plaintiff and doesn't involve resolving factual disputes. *Islam v. LX Ave. Bagels, Inc.*, 2019 WL 5198667, at *5 (S.D.N.Y. Sept. 30, 2019). As required at this early stage, Gallardo has made a sufficient showing.

*First*, even if some parts of the stores are managed separately, they still exhibit a great deal of integration. In fact, they share the same manager: David Kang. Kang manages both Key Food locations (typically going to both locations in a single workday) and his pay comes from both of them. Dkt. 38-1 at 5:6–20, 9:10–21.

*Second*, that joint control extends to labor relations. Gallardo alleges that at both locations he was under the supervision of Ted Park and David Kang. Dkt. 31 ¶ 2. In fact, on his telling he was transferred from one store to the other as was needed, *id.*, and he wasn't alone: Defendants concede that employees were transferred from the Amsterdam location to the Broadway location when it opened up. Dkt. 36 at 2. And Kang's deposition shows that at least one other employee was routinely shared between stores. Dkt. 38-1 at 8:23–9:2. "The fact that a single manager transfers an employee from one location to another can add support to a claim that the two locations are not run independently but are interconnected." *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 589 (S.D.N.Y. 2020). And the centralization goes deeper still—Kang set compensation for employees at both locations and approved time off; Park could hire or fire employees at both stores. Dkt. 38-1 at 12:18–23, 13:5–23.

*Third*, the separate legal ownership is inconsequential given the amount of operational overlap. Defendants' argument boils down to the single-sentence assertion that "the ownership structure of the two corporate entities is not uniform." Dkt. 36 at 2. But this by itself can't be enough. "If maintaining distinct corporate forms were enough to defeat a single integrated enterprise allegation, the doctrine would be meaningless." *Ramirez*, 2023 WL 4541129, at *5. It would be one thing if the two companies had no shared ownership or management-in-common. But defendants fail to argue anything close to that.

## II.   Conditional certification is warranted, but with some tweaks to the notice

### A.  Gallardo meets his modest burden to warrant conditional certification

Conditional certification is warranted if a plaintiff makes a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 447 (S.D.N.Y. 2011) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Gallardo has made a modest factual showing of a common policy or plan. He alleges that he discussed with specific coworkers "how they were not being paid for all of the hours that they had worked … [while they] were packing the produces together, and also particularly on pay day." Dkt. 31 ¶ 3. They "often discuss[ed] how [their] paychecks never seemed to reflect the hours [they] actually worked." *Id.* This is exactly the same kind of evidence that this Court found sufficient in *Reyes v. A.B. Bakery Rest. Corp.*, 2023 WL 5918056, at *3 (S.D.N.Y. Sept. 11, 2023). And on top of that, Kang testified in his deposition that all employees were subject to the same clock-in/clock-out policies. Dkt. 38-1 at 21:18–22:4.

Against that, defendants argue that Gallardo's theory doesn't generalize beyond his own situation. Gallardo argues that his time records reflect artificially uniform times that he clocked in or

out. But, defendants say, Gallardo got some discovery into the time records for other employees and seemingly couldn't identify that pattern for anybody else. This argument operates at the wrong level of generality. For now, Gallardo simply argues that he and his fellow employees were subject to a common policy of not being paid for their hours worked. Later, the Court will be in a position to address whether the full evidence bears that out in the finer details. But for now, he's said enough.

### B. The proposed notice requires modification

Gallardo wants to notify Key Food employees going back six years. To do that he wants their names, titles, compensation rates, last known mailing addresses, email addresses, and all known telephone numbers and dates of employment. And, if somehow all that fails, Gallardo wants their social security numbers. Then, he has a specific form of notice that he wants to use. Each of these must be pared back or modified.

*First,* defendants are right that Gallardo's proposed six-year notice period goes back too far. The statute of limitations for an FLSA claim is three years at most. *Robreno v. Eataly Am., Inc.*, 2018 WL 3105071, at *2 (S.D.N.Y. June 25, 2018). "Thus, the request for certification of class extending six years is too long." *Id.* Gallardo argues that a six-year period is required because he's also bringing New York Labor Law claims with a six-year statute of limitations and would want to certify a Rule 23 class on those claims. But Gallardo doesn't explain how or why this would help with an opt-out class and hasn't moved to certify any Rule 23 class. Besides, "[i]t would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 688 (S.D.N.Y. 2013).

*Second*, defendants should furnish the names, titles, mailing addresses, email addresses, and telephone numbers of any potential opt-in class members. Though defendants argue that this is "duplicative," the Court sees little harm in it given the volume of electronic contacts that each of us already receive every day. What is *not* necessary at this stage in this suit includes social security numbers, compensation rates, and time sheets. Gallardo gives no reason to think that phone numbers and email won't be sufficient to give proper notice, and the privacy interest of employees in their own social security numbers counsels against providing it. The other information can be obtained from the opt-in plaintiffs themselves once they sign up.

*Third*, Gallardo's notice needs some tweaks. As a general matter, the Court "maintains broad discretion over the form and content of the notice." *Hernandez v. The City of New York*, 2017 WL 2829816, at *6 (S.D.N.Y. June 29, 2017) (quotation omitted). Defendants want four changes to the proposed form: (1) that it shouldn't say that by returning it the plaintiff agrees to hire Gallardo's lawyer and should instead identify the right to pick your own lawyer, (2) that the notice be returned to the *court* and not to Gallardo's lawyer, (3) that the notice include a specific warning about attorneys' fees, and (4) that the defendants' counsel's information should be added to the notice to mitigate the risk of creating the perception that the Court has endorsed plaintiff's attorneys over those of the defendants.

Taking these one-by-one, the Court concludes that:

- The form should make clear that plaintiffs can retain their own attorneys should they so choose, but the designation to opt into representation may remain.
- The notice may be returned to Gallardo's lawyers, not the Court, as return to the Court might create unnecessary delays.
- Defendants are right that Gallardo's proposed notice about fees is misleading (it says that "you do not have to pay any attorneys' fees or expenses"), but their own proposal is misleading in its own way and might unduly confuse and deter potential plaintiffs (it asserts that "[i]f you want your own attorney to represent you in this lawsuit … you will be responsible for paying that attorneys' fees and expenses."). The right middle ground is to use defendant's proposed language to describe Gallardo's lawyers' contingency fee but to cut the proposed second paragraph that suggests that fees will be paid if alternative counsel is used instead.
- Defendants' counsel's information should be included as proposed (and Gallardo doesn't contest this).

Otherwise, defendants don't object to Gallardo's proposed notice so the rest may remain as proposed.

### C. Opt-in plaintiffs' claims are tolled from the filing of the motion to the date that notice goes out

The final issue before the Court is whether the opt-in period should be tolled while this motion was pending. As Gallardo correctly points out, this is the routine practice in this circuit and is one that this Court has followed before. *Reyes*, 2023 WL 5918056, at *5 (citing *Xiao Ling Chen v. XpresSpa at Term. 4 JFK, LLC*, 2016 WL 11430475, at *10 (E.D.N.Y. Feb. 16, 2016), report and recommendation adopted sub nom. *Chen v. XpresSpa at Term. 4 JFK, LLC*, 2016 WL 5338536, at *10 (E.D.N.Y. Sept. 23, 2016)). The Court adheres to this practice and tolls the statute of limitations for the opt-in plaintiffs for the period between the filing of this motion and when plaintiff is able to send them the notice.

### CONCLUSION

The motion for conditional certification is GRANTED in part and DENIED in part. Notice should proceed along the lines described above.

The Clerk of Court is directed to terminate Dkt. 28.

SO ORDERED.

Dated: January 29, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge